## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

AARON BABNER,

       Plaintiff,

       v.

CUMBERLAND COUNTY, et al.,

       Defendants.

CIVIL ACTION NO. 3:20-cv-02465

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This federal civil rights action was commenced when the plaintiff, Aaron Babner, appearing through counsel, filed his fee-paid complaint on December 31, 2020. (Doc. 1.) The complaint names seven defendants: (1) Cumberland County, a Pennsylvania municipality that owns and operates the Cumberland County Correctional Facility ("CCCF"), where Babner was formerly incarcerated as a pretrial detainee; (2) Earl Reitz, the warden of CCCF; (3) Rebekah Finkey, the deputy warden of treatment at CCCF; (4) PrimeCare Medical, Inc. ("PrimeCare"), a Pennsylvania corporation that contracted with CCCF and Cumberland County to provide medical treatment to inmates at CCCF; (5) Michelle Young, a registered nurse employed by PrimeCare to provide medical services to inmates at CCCF; and (6) Sandra Abbey, a psychiatric

certified registered nurse practitioner employed by PrimeCare to provide psychiatric medical services to inmates at CCCF.[1] The counseled complaint asserts: (1) § 1983 deliberate indifference to serious medical needs claims against the "medical defendants"[2] and the "correctional officer defendants"[3]; (2) supplemental state-law medical negligence and corporate liability claims against the medical defendants only; and (3) § 1983 municipal or supervisory liability claims against the "county defendants"[4] and PrimeCare. At the time of filing, Babner was no longer incarcerated.

All defendants actually named in the complaint and served with original process have appeared through counsel to answer the complaint. (Doc. 17; Doc. 18.) The county defendants subsequently moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 19). That motion is fully briefed and ripe for

---

[1] The complaint also names several fictitious "John Doe" and "ABC Company" defendants, none of whom have been identified, much less served with original process.

[2] The "medical defendants" include PrimeCare, Young, Abbey, and several unidentified and unserved fictious defendants.

[3] The "correctional officer defendants" include unidentified and unserved fictious defendants only.

[4] The "county defendants" include Cumberland County, Reitz, and Finkey only.

decision. (Doc. 20; Doc. 26.)

## I.   ALLEGATIONS OF THE COMPLAINT

On December 14, 2018, Babner was received into custody at CCCF; he was incarcerated as a pretrial detainee based on charges that he had violated a protection from abuse order.[5] At the time of his arrival at CCCF, unspecified medical personnel conducted an intake interview with Babner, who advised that he had been taking Tegretol and gabapentin on a daily basis. The intake interviewer advised Babner that he would not be receiving his medications because he would only be at CCCF for a short time. Babner explained to unspecified individuals that he needed these medications, and he further advised that he suffered from asthma.

On December 31, 2018, Babner again requested his medications. On January 2, 2019, a second intake interview was conducted by defendant Young. Babner's prescriptions were verified with his pharmacy. That verification indicated that, prior to his incarceration, Babner had been prescribed 800 mg of Tegretol twice per day, for a total daily dosage of 1,600 mg, and he had been prescribed 800 mg of

---

[5] *See generally Commonwealth v. Babner*, Docket No. CP-21-MD-0000723-2018 (Cumberland Cty. (Pa.) C.C.P.).

gabapentin per day. Young placed an order for Tegretol that same day, which was approved by defendant Abbey.

Because Babner had not taken any Tegretol since his incarceration commenced on December 14, 2018, he should have been treated as if he had never taken the medication and started on a low initial dose, to be gradually tapered up to avoid serious harm to Babner due to the toxicity of Tegretol. But instead, on January 2, 2019, Babner was prescribed the full 1,600 mg dosage of Tegretol (800 mg twice daily) immediately. Moreover, after the Tegretol was resumed, bloodwork should have been promptly ordered to monitor Babner's Tegretol levels and to ensure it was not at a toxic level. Instead, bloodwork was not ordered and medical personnel ordered that Babner's Tegretol levels be checked *two weeks* after he resumed taking it. In addition, beginning on January 2, 2019, Babner was prescribed 600 mg of gabapentin daily.

Babner initially questioned the amounts of Tegretol and gabapentin he was prescribed and advised unidentified medical personnel that he had been gradually built up to those dosages in the past. His concerns were dismissed by the unidentified medical personnel. Babner was told he must take the prescribed amount, and he was assured

that he would not suffer any harm as a result.

On January 3, 2019, Babner received two 800 mg doses of Tegretol and one 600 mg dose of gabapentin. On January 4, 2019, Babner again received two 800 mg doses of Tegretol and one 600 mg dose of gabapentin. As a result of the excessive amounts of Tegretol and gabapentin he had received, Babner became lethargic, disoriented, and he experienced slurred speech and difficulty walking.

Babner told unidentified correctional officers that he did not think he could go to work because he was unable to perform his work duties. The correctional officers dismissed his concerns. When Babner arrived at his workplace, his employer questioned whether he had been drinking alcohol. Babner advised him that he was experiencing the effects of his newly resumed prescription medicines. His employer permitted him to sleep in the back room.

When Babner returned to CCCF, he told unidentified correctional officers that he felt "high," but his concerns were dismissed.

Babner spoke with his mother on the telephone, and she was unable to understand him due to his slurred speech. She called CCCF officials and complained about her son's condition, but she was told he would go

to "the hole" if he refused his medications.

On January 5, 2019, at approximately 2:30 a.m., Babner was sleeping in the top bunk of his cell when, as a result of the excessive amounts of Tegretol and gabapentin in his system, he began to experience muscle twitches and fell, striking his head on the floor. A "Code Blue" was called and Babner was found by CCCF personnel sitting on the floor, holding a towel to his head, and blood was noted on the floor. Babner was evaluated by medical personnel, who noted that his pupils were dilated, his mental status was altered, and he was disoriented. They also observed a laceration on his head. CCCF medical personnel initially placed a cervical collar on Babner, but it was removed because he was vomiting.

CCCF medical personnel decided to send him to the emergency department at Geisinger Holy Spirit Hospital ("Geisinger") by ambulance. Emergency medical services records reflect that Babner was in and out of consciousness, dizzy, and vomiting, and he was experiencing severe pain in his head, neck, back, and elbow.

Babner was admitted to Geisinger, where various blood tests were performed. These tests revealed that his Tegretol level was toxic at 16.7

ug/mL—a result that was flagged as "critical" because it was well above the normal reference range of 4 to 12 ug/mL. The blood tests further revealed that Babner had elevated liver function test levels, including a creatine kinase level in excess of 20,000 U/L, which was well in excess of the normal reference range of 39 to 308 U/L. An elevated creatine kinase level indicates a condition known as rhabdomyolysis, which is a breakdown of muscle tissue that can lead to serious complications, including kidney failure.

Medical providers at Geisinger withheld Babner's Tegretol until his levels trended down. Once that happened, his Tegretol was re-started at a dosage of 400 mg daily (200 mg twice daily). Babner was discharged from Geisinger on January 9, 2019.

In cursory fashion, the complaint alleges that the county defendants and PrimeCare, with deliberate indifference, failed to develop and implement policies, practices, and procedures to ensure that detainees or inmates, including Babner, would receive safe and proper prescriptions of medication and or to ensure proper fall prevention protocols. The complaint further alleges, also in cursory fashion, that the county defendants and correctional officials had a policy, practice, or

custom of dismissing detainees' or inmates' concerns regarding their medical needs or medical conditions. Although not clearly pleaded, the complaint appears to suggest that the county defendants failed to adequately train and supervise the medical defendants and correctional officer defendants with respect to the provision of proper medical care to inmates.

## II.   LEGAL STANDARD

The county defendants have answered the complaint and moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party." *U.S. Fid. & Guar. Co. v. Tierney Assoc., Inc.*, 213 F. Supp. 2d 468, 469 (M.D. Pa. 2002) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)); *see also Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 163 (M.D. Pa. 2007) ("When deciding a motion for judgment on the pleadings, the court is directed to view 'the facts presented in the pleadings and the inferences

drawn therefrom in the light most favorable to the nonmoving party.'")
(quoting *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir.
1991)). In deciding a Rule 12(c) motion, we may also consider "matters of
public record, and authentic documents upon which the complaint is
based if attached to the complaint or as an exhibit to the motion." *Chemi
SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496–97 (E.D. Pa. 2005);
*see also Kilvitis v. Cty. of Luzerne*, 52 F. Supp. 2d 403, 406 (M.D. Pa. 1999)
("In deciding a Rule 12(c) motion, however, a court may take judicial
notice of any matter of public record."). Ultimately, "[a] party moving for
judgment on the pleadings under Rule 12(c) must demonstrate that there
are no disputed material facts and that judgment should be entered as a
matter of law." *U.S. Fid. & Guar.*, 213 F. Supp. 2d at 469–70 (citing
*Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir.
1988), and *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers,
Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991)).

## III.   DISCUSSION

The county defendants are named in only one of the three counts of
the plaintiff's complaint: Count Three asserts § 1983 municipal liability
claims against Cumberland County and PrimeCare, and § 1983

supervisory liability claims against Reitz and Finkey.[6] The county defendants—Cumberland County, warden Reitz, and deputy warden Finkey—have moved for judgment on the pleadings. PrimeCare is separately represented, and it has not moved for judgment on the pleadings.

### A. Warden Reitz and Deputy Warden Finkey

Warden Reitz and Deputy Warden Finkey are named in the caption and identified once in the body of the complaint, but no conduct whatsoever by these two individual defendants is alleged at all. Absent any specific allegations of personal involvement by these defendants, the plaintiff has failed to state a plausible § 1983 claim upon which relief can be granted. *See Simonton v. Ryland-Tanner*, 836 Fed. App'x 81, 84 (3d Cir. 2020) (per curiam); *Hudson v. City of McKeesport*, 244 Fed. App'x 519, 522 (3d Cir. 2007) (per curiam); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Unum v. Expert Witness*, Civil Action No. 3:14-2332, 2015

---

[6] Count One asserts § 1983 claims for deliberate indifference to serious medical needs against the individual medical defendants (several of whom are unidentified and unserved fictitious defendants) and the individual correctional officer defendants (all of whom are unidentified and unserved fictitious defendants). Count Two asserts state-law medical negligence claims against the individual medical defendants and state-law corporate negligence claims against PrimeCare.

WL 136384, at *8 (M.D. Pa. Jan. 7, 2015); *see also Caristo v. Blairsville-Saltsburg Sch. Dist.*, 370 F. Supp. 3d 554, 569 n.21 (W.D. Pa. 2019) ("Plaintiff must plead facts demonstrating specific personal involvement of each Individual Defendant as to any Constitutional deprivations she alleges. Group pleading as to such matters will not suffice.").[7]

Accordingly, the plaintiff's § 1983 supervisory liability claims against Reitz and Finkey will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## B. Cumberland County

The plaintiff seeks to hold Cumberland County liable for the allegedly unconstitutional conduct of the medical defendants, which include PrimeCare and several medical professionals employed by

---

[7] *See generally Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) ("[T]o hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."). Here, the complaint has failed to plausibly allege facts to satisfy *any* of the foregoing elements.

PrimeCare. The plaintiff contends that the County has failed to develop and implement policies, practices, and procedures to ensure that inmates receive safe and proper prescriptions of medication or to ensure proper fall prevention protocols. The plaintiff further contends that the County had a policy, practice, or custom of dismissing inmates' concerns regarding their medical needs or medical conditions. Although not clearly pleaded, the complaint appears to suggest that the County also failed to adequately train and supervise medical personnel and correctional officers with respect to the provision of proper medical care to inmates.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. Cumberland County is such a municipality subject to liability as a "person" under § 1983. *See id.* at 694; *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

But "[u]nder *Monell*, a municipality cannot be subjected to liability

solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality or corporation] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Alternatively, "[a] municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries

and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers.").

Here, the plaintiff relies not on the affirmative implementation or execution of a policy, but the County's alleged failure to adopt adequate policies with respect to the prescription of medications to inmates or fall prevention protocols with respect to inmates who are prescribed medications. The plaintiff further alleges, in conclusory fashion, that the County has a policy of disregarding inmates' medical concerns. Beyond these vague assertions that existing policies were inadequate, *see Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (finding vague assertions of policy deficiencies insufficient to impose liability under *Monell* and § 1983), the plaintiff points to no prior incidents from

which we might reasonably infer that the County and its governing officials had actual or constructive knowledge of the purported policy deficiencies upon which the plaintiff's § 1983 *Monell* claims are premised. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 86 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that, where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

The complaint appears to further suggest that the County should

be held liable because Babner's injury could have been prevented if it has simply implemented better policies. But policies are not deficient simply because they are not the best. *See Serafin v. City of Johnstown*, 53 Fed. App'x 211, 215 (3d Cir. 2002) ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here."); *see also Koreny v. Smith*, Civil Action No. 17-371, 2018 WL 1141513, at *16 (W.D. Pa. Mar. 2, 2018) ("An assertion that a constitutional injury could have been avoided with more or better training is insufficient.").

Accordingly, the plaintiff's § 1983 municipal liability claims against Cumberland County will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## C. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108

(3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Based on the sparse facts alleged in the complaint, we cannot say that amendment would be futile. Therefore, the plaintiff's claims against the county defendants will be dismissed with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the county defendants' motion for judgment on the pleadings will be granted, and the plaintiff's § 1983 municipal and supervisory liability claims against Cumberland County, Earl Reitz, and Rebekah Finkey will be dismissed without prejudice for failure to state a claim upon which relief can be granted, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Dated: March 11, 2022                  ***s/Joseph F. Saporito, Jr.***
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge